UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

GLORIA GALAZ,

Defendant.

Case No.: 15-cr-02559-GPC

**ORDER GRANTING MOTION FOR RELEASE OR HOME CONFINEMENT, MOTION FOR COMPASSIONATE RELEASE, MOTION FOR RECONSIDERATION OR RENEW, MOTION TO REDUCE SENTENCE**

**[ECF Nos. 56, 60, 64, 65]**

Defendant Gloria Galaz seeks her immediate release from prison due to her vulnerabilities to the novel coronavirus disease ("COVID-19") pandemic. On May 21, 2020, Galaz, proceeding *pro se*, filed a motion for release or home confinement. ECF No. 56. On May 30, 2020, the Government filed a Response in opposition. ECF No. 58. Galaz then filed a renewed *pro se* motion for compassionate release on June 25, 2020. ECF No. 60. On July 6, 2020, the Court submitted an order "appointing counsel from Federal Defenders of San Diego, Inc. to assist [Galaz] in seeking compassionate release." ECF No. 61. In particular, "[t]he Court direct[ed] defense counsel to file by July 27,

2020 either a reply brief in response to the Government's opposition (ECF No. 58), or, in the alternative a new motion for compassionate release on [Galaz's] behalf." *Id.* On July 14, 2020, Galaz filed an additional *pro se* motion for reconsideration or renew, ECF No. 64, before filing, through counsel and in response to the Court's order, the instant motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1). ECF No. 65.[1] On July 31, 2020, pursuant to Court order, the Government filed a subsequent supplemental response in opposition. ECF No. 70. For the reasons set forth below, the Court GRANTS Galaz's motion.

## I. BACKGROUND

Galaz was convicted by guilty plea of one count of Importation of a Controlled Substance in violation of 21 US.C. §§ 952 and 960. ECF No. 54 ("Judgment" or "Judg."). This Court sentenced Galaz to a term of imprisonment of 48 months, followed by 3 years of supervised release. *Id.* She is presently serving her sentence at the Federal Medical Carswell Center ("FMC-Carswell"). ECF No. 56 at 6. As of today's date, Galaz has served 14 months of her sentence.[2]

Galaz is 33 years old and suffers from obesity, a history of smoking, tuberculosis, and depression. ECF No. 65 at 8. Galaz initially reported that she suffered from "untreated fluid in the lungs." ECF No. 56. at 4. In its opposition, the Government stated that Galaz's claim was "only partially accurate" and stated that "BOP records show that Galaz has pleural effusion, possibly as a by-product of developing [tuberculosis] while in custody." ECF No. 58 at 6. The Government further stated that although BOP has been treating both her lung condition and tuberculosis, they are still unsure whether Galaz still

---

[1] Galaz submitted sealed and unsealed exhibits in support of this motion. ECF Nos. 65-1, 68. References to page numbers for these exhibits follow the Bates number pagination. All other page number references for other filings refer to the CM/ECF pagination.

[2] Galaz served 14 days before her release on bond, and was returned to custody on June 11, 2019.

has tuberculosis. *Id.* In its order appointing Federal Defenders of San Diego, Inc., the Court specifically "direct[ed] defense counsel to address, *inter alia*, the current status of Defendant's health condition and whether or not she is currently suffering from tuberculosis, as referenced in the Government's opposition." ECF No. 61. Galaz has since filed medical records with the Court, including a BOP Health Services Clinical Encounter Report from July 1, 2020 diagnosing Galaz with latent tuberculosis. Exhibit D at 32.[3]

Galaz last resided in Tijuana, Mexico with her partner. ECF No. 29 ("Presentence Investigation Report" or "PSR") at 9. She has one thirteen-year-old daughter from a prior relationship who currently lives with Galaz's mother in Tijuana. *Id.*

## II. DISCUSSION

Defendant now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative

[3] District courts may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Thus, a court may judicially notice matters of public record including "government documents available from reliable sources on the internet." *California River Watch v. City of Vacaville*, No. 2:17-cv-00524-KJM-KJN, 2017 WL 3840265, at *2 n.1 (E.D. Cal. Sept. 1, 2017). Accordingly, the Court judicially notices the exhibits submitted by Defendant and matters of public record. *See, e.g.*, *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 n.2 (9th Cir. 2007) (taking judicial notice of the Defense Security Cooperation Agency's (DSCA) published guidelines); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial notice of public records on the City of Santa Monica's official website). In doing so, the Court judicially notices "the contents of the documents, not the truth of those contents." *Gish v. Newsom*, No. EDCV 20-755-JGB(KKx), 2020 WL 1979970, at *2 (C.D. Cal. April 23, 2020).

> rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Defendant has satisfied the administrative exhaustion requirement, and second, whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*. As one district court recently explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to

> expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

**A. Exhaustion Requirement**

Section 3582(c)(1)(A) imposes an exhaustion requirement which must be satisfied before a defendant may move the court for release. On April 5, 2020, Galaz alleges that she sent a request to the Warden of FMC-Carswell for Compassionate Release/Reduction in Sentence via prison mailbox. ECF No. 56 at 2. As of today's date, over 120 days have elapsed since Galaz sent this request. Galaz states that she did not receive a response. ECF No. 60 at 1. The Government contested the issue of exhaustion in its initial Opposition. ECF No. 58 at 9–16. However, the Opposition contains no acknowledgement of Galaz having sent a request for Compassionate Release/Reduction in Sentence to the Warden of FMC-Carswell nor is there any indication as to whether the Warden of FMC-Carswell denied Galaz's request. *Id.* On June 25, 2020, Galaz submitted her second motion for compassionate release, reiterating that thirty days had elapsed since she submitted her request to the Warden of FMC-Carswell. On July 14, 2020, in Galaz's most recently-filed motion, she again states that she submitted a request to the Warden of FMC-Carswell at the end of April 2020. ECF No. 65 at 6. The Government does not discuss exhaustion in the most recently-filed supplemental opposition. ECF No. 70. Courts have previously credited movants' statements about

their submissions of requests for release to the Wardens of their facilities. *See, e.g.*, *USA v. Trent*, No. 16-CR-00178-CRB-1, 2020 WL 1812214, at *1 (N.D. Cal. Apr. 9, 2020) ("Confronted with conflicting evidence, the Court credits [the applicant's] representation, which is based on direct knowledge rather than the failure to confirm the existence of a filing from over a month ago"). Accordingly, the Court credits Galaz's statement that she submitted a request to the Warden of FMC-Carswell on April 5, 2020. Since over 120 days have elapsed since Galaz's request was submitted—well above the 30 days mandated by 18 U.S.C. § 3582(c)(1)(A)—the Court finds that the exhaustion requirement has been met.

**B. Extraordinary and Compelling Reasons**

Section 3582(c)(1)(A)(i) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction; ...
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

Application Note 1 to these Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a

correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release. In addition, the Note provides that certain family circumstances may rise to the level of "extraordinary and compelling reasons" which justify compassionate release. One such circumstance is the "death or incapacitation of the caregiver of the defendant's minor child or minor children."

Galaz argues that her health conditions qualify as extraordinary and compelling reasons justifying her release. The Government counters that Galaz's conditions do not qualify as a "higher risk factor," as determined by the Centers for Disease Control and Prevention ("CDC"). ECF No. 58 at 7, 18; ECF No. 70 at 1. Additionally, the Government argues that none of Galaz's conditions are ones from which she is "not expected to recover." ECF No. 58 at 7; ECF No. 70 at 2 (citing 1B1.13, cmt. N.1(A)(ii)). On this basis, the Government maintains that Galaz does not have "'extraordinary and compelling reasons' warranting release." ECF No. 58 at 16; *see* ECF No. 70 at 2. Moreover, the Government opposes Galaz's motion on the basis that Galaz would pose a danger to public safety if released based on the nature of her offense, Galaz has no known place to live in the United States, and Galaz's sentence is already lenient. ECF No. 58 at 18–20.

The Court finds that the heightened risks that Galaz faces based on her medical conditions if she were to contract COVID-19 weigh heavily in favor of her release. The CDC has warned that individuals who suffer from obesity are at a higher risk of becoming severely ill and dying from COVID-19. *See People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC defines obesity as "a body mass index (BMI) of 30 or above." *Id.* At the time of the amended PSR in August 2019, Galaz, who is 5 feet 4

inches, weighed 190 lbs. Exhibit C at 114. Using a standard adult BMI calculator, this results in a BMI of 32.6. More recently, on December 6, 2019, Galaz's weight was 183 pounds; on January 10, 2020, her weight was 182 pounds; and on February 13, 2020, her weight was 181 pounds. *See* Exhibit D at 42, 45, 47, 61. These weights result in a BMI of 31.4, 31.1, and 31.1 respectively—again, above the 30 cutoff. In recognition of obesity as a heightened risk factor, district courts have granted compassionate release for individuals with this condition. *See, e.g.*, *United States v. Lacy*, No. 15-cr-30038, 2020 WL 2093363, at *6 (C.D. Ill. May 1, 2020) ("[O]besity . . . alone would increase the serious risks of COVID-19 for Defendant."); *see also United States v. Sarkisyan*, No. 15-cr-00234-CRB-15, 2020 WL 2542032, at *2 (N.D. Cal. May 19, 2020) (finding that obesity, in combination with other underlying medical conditions, rendered Defendant "uniquely vulnerable to serious illness if he contracts COVID-19."); *United States v. Trent*, No. 16-CR-00178-CRB-1, 2020 WL 1812242, at *1 (N.D. Cal. Apr. 9, 2020) (same).

Additionally, Galaz has a history of smoking. For ten years—or 30% of her life—Galaz smoked a quarter pack of cigarettes a day. ECF No. 68 ("Ex. D") at 60 ("SOCIAL: smoker ¼ ppd x 10 years."). The CDC has identified smoking as a condition which might put an individual at increased risk of for severe illness from COVID-19. *See People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ("Being a current or former cigarette smoker *may* increase your risk of severe illness from COVID-19.") (emphasis added). While the Court recognizes that COVID-19 is a new disease and that currently there are limited data and information about the impact of certain underlying medical conditions and whether they increase the risk of severe illness from COVID-19, recent research suggests that the risk presented from smoking is not merely speculative. *See* Roengrudee Patanavanich et al., *Smoking Is*

*Associated With COVID-19 Progression: A Meta-analysis*, NICOTINE & TOBACCO RESEARCH (2020), https://academic.oup.com/ntr/article/doi/10.1093/ntr/ntaa082/5835834 (finding that the risk of disease progression in those who currently smoke or previously smoked was nearly double that of non-smokers). As COVID-19 is a respiratory disease, and "[s]moking . . . increase[s] the risk and severity of pulmonary infections because of damage to upper airways and a decrease in pulmonary immune function in general." *Id.* Considering this correlation between a history of smoking and risks associated with COVID-19, courts have granted compassionate release to individuals with histories of smoking. *See, e.g.*, *United States v. Mueller*, No. 08-CR-139-AB, 2020 WL 3791548, at *3 (E.D. Pa. July 7, 2020) (recognizing that a history of smoking increases the risk of disease progression and that "when the disease worsens, current or former smokers had more acute or critical conditions or death."); *United States v. Rich*, No. 17-CR-94-LM, 2020 WL 2949365, at *4 (D.N.H. June 3, 2020) (finding that Defendant's documented history of smoking, in combination with other underlying medical conditions, "convince the Court that he is at a substantially higher risk of experiencing severe illness or complications from COVID-19.").

Galaz also suffers from latent tuberculosis, *see* Ex. D at 32, and "[p]leural effusion," or fluid around the lungs. *Id.* at 48. While the Court notes that the CDC has not yet identified tuberculosis as an underlying medical condition that poses a higher risk factor, the Court still finds these health conditions concerning. Galaz's health, like that of many others, has unfortunately suffered as a result of contracting tuberculosis while incarcerated. *See* CDC, *Prevention and Control of Tuberculosis in Correctional and Detention Facilities*, MORBIDITY AND MORTALITY WEEKLY REPORT (July 7, 2006), available at https://www.cdc.gov/mmwr/preview/mmwrhtml/rr5509a1.htm (a "disproportionately high percentage of TB cases occur among persons incarcerated in U.S. correctional facilities") (last visited Jul. 29, 2020). Prison facilities in Texas, where

FMC-Carswell is located, have previously accounted for around one-eighth of all reported tuberculosis cases. *See* CDC, *Reported Tuberculosis in the United States, 2018*, available at https://www.cdc.gov/tb/statistics/reports/2018/table37.htm (last visited Jul. 29, 2020). District courts have recognized recent studies suggesting that latent tuberculosis, which can live in the body for years, can be activated by COVID-19, and have therefore released people with latent tuberculosis from prison. *See, e.g., Thierry B. v. Decker*, No. 20-4035(MCA), 2020 WL 3074006, at *8 (D.N.J. June 10, 2020) ("[t]here is preliminary evidence that latent and active tuberculosis may be correlated with increased susceptibility to COVID-19 as well as increased severity."); *Doe v. Barr*, No. 20-CV-2141-LB, 2020 WL 1820667, at *5 (N.D. Cal. Apr. 12, 2020) (ordering petitioner's release and noting study that "found that 'COVID-19 disease progression may be more rapid and severe' in those with latent or active tuberculosis."). Moreover, district courts have found claims of pleural effusion in combination with other medical conditions sufficient to grant release. *See, e.g, United States v. Hunt*, No. 18-20037, 2020 WL 2395222, at *2, 6 (E.D. Mich. May 12, 2020) (finding "extraordinary and compelling" reasons for release where Defendant's health conditions involved pleural effusion and cardiac complications causing him to have acute respiratory distress); *United States v. Petrossi*, No. 1:17-CR-192, 2020 WL 1865758, at *1 (M.D. Penn. Apr. 14, 2020) (finding Defendant's health problems a "major mitigating factor" when consisting of leukemia, pneumonia, pleural effusions, and a potentially cancerous lung nodule).

Galaz additionally argues that her depression and mental health conditions compromise her immunity and increase her risk if she were to contract COVID-19. The Sentencing Commission's policy statement indicates that a defendant's cognitive impairment or mental health due to the aging process may also be the basis for granting compassionate release, *see* Application Note 1(A)(ii). This Court finds that Galaz's

diagnosed depression, *see* Ex. D at 34–37, 48, makes her release request especially compelling. Courts have recognized that the impact of COVID-19 is particularly severe for individuals suffering from depression, in addition to physical vulnerabilities. *See Doe*, 2020 WL 1820667, at *4, *9 (ordering the release of a foreign national, detained in a county jail awaiting for his removal proceedings, in part because he suffers from PTSD and "[g]rowing evidence demonstrates that PTSD, anxiety/stress, *and depression* can lead to decreased immune response and increased risk of infections" and thus "compound his susceptibility" to COVID-19) (emphasis added). The Court finds that, in Galaz's case in particular, the mental and physical stress of being detained at FMC-Carswell is pronounced, as it is currently the federal prison with the second largest outbreak in the country—543 inmates have either tested positive for COVID-19 or are currently recovering from COVID-19. Federal Bureau of Prisons, *COVID-19: Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed Aug. 3, 2020). At least three staff members have tested positive, and three inmates have died. *Id.* As of July 25, 2020, Defendant states that COVID-19 tests were pending for an additional 22 inmates. ECF No. 65 at 15. Moreover, FMC-Carswell is located in Texas, which emerged as an epicenter of the pandemic in the United States "in early June," when "virus cases and related hospitalizations began to multiply at unprecedented rates[.]" Emily Czachor, *Texas Daily COVID-19 Cases Top Italy's Record When It was Global Epicenter*, NEWSWEEK (Jun. 30, 2020), available at https://www.newsweek.com/texas-daily-covid-19-cases-top-italys-record-when-it- was-global-epicenter-1513855 (last visited Aug. 3, 2020).

Any incarcerated person with even one of the underlying conditions identified by the CDC is unlikely to be able "to provide self-care within the environment of a correctional facility" to avoid contracting COVID-19. U.S. Sentencing Guidelines § 1B1.13 cmt. 1(A)(ii). *See also* Katelyn Polantz, *Inmates Sue for Soap and Paper Towels*

*as Coronavirus Spreads in Jails*, CNN INT'L, Mar. 31, 2020, https://www.cnn.com/2020/03/31/politics/inmates-sue-coronavirus-jails/index.html. Prison conditions mean incarcerated individuals, as well as society as a whole, are safer the more defendants are released. *See* The Times Editorial Board, *Coronavirus Makes Jails and Prisons Potential Death Traps. That Puts Us All in Danger*, L.A. TIMES, Mar. 18, 2020, https://www.latimes.com/opinion/story/2020-03-18/coronavirus-prisonsreleases. This is especially true for defendants like Galaz who are at risk of contracting severe cases, and even dying, of COVID-19. *See United States v. Johnson*, No. 15-cr-125 (KBJ), 2020 WL 3041923, at *10 (D.D.C. May 16, 2020) ("The mental and physical stress of being detained under such conditions of confinement, while dealing with established and serious physical and mental health issues, almost certainly impairs [a defendant's] ability to provide the type of self-care within the prison environment that is needed [given the COVID-19 pandemic]."); *United States v. Ramos*, ___ F. Supp. 3d ___, No. 18-CR-30009-FDS, 2020 WL 1478307, at *1 (D. Mass. Mar. 26, 2020) ("[I]t is not possible for a medically vulnerable inmate . . . to isolate himself in this institutional setting."). Additionally, as one court has noted, "it is apparent that cases of COVID-19 have spread rapidly through the federal prison system, including FMC-Carswell where the defendant is located, despite the BOP's commendable efforts to stop the virus from spreading." *United States v. Castillo*, No. CR H-08-146-01, 2020 WL 2820401, at *4 (S.D. Tex. May 29, 2020) (citing Mark Dent, et al., *Sick, Elderly, and Fearing Coronavirus: Life Inside Fort Worth's Women's Federal Prison*, FORT WORTH STAR-TELEGRAM, Apr. 20, 2020. In other words, Galaz has effectively demonstrated a nexus between her medical conditions and the ongoing pandemic which supports a reduction under section 3582.

The section 3553(a) sentencing factors also weigh in favor of Galaz's immediate release. One such factor the Court must consider is the question of affording adequate

deterrence. 18 U.S.C. § 3553(a)(2). After entering a guilty plea to importation of 18.58 grams of cocaine, Galaz made the ill-advised decision not to appear for sentencing and absconded to Mexico for nearly three and a half years where she remained with her daughter until her arrest. ECF No. 58 at 2; APSR at 15. While ultimately misguided, Galaz "chose to ignore her responsibilities to this Court because of her daughter." ECF No. 51 at 4. Taking note of her "pre-sentence rehabilitation" and "family ties and responsibilities," ECF No. 68, Ex. A at 4, this Court sentenced Galaz below the Guidelines range to fourty-eight months in custody, followed by three years supervised release. Judg. at 2. Galaz has expressed that, "she fully appreciates her error and will not ever be before this Court or any court again." ECF No. 51 at 4.

As of today's date, Galaz has served 14 months of her 48-month sentence. Courts have been willing to grant release in spite of a short amount of time served where a defendant's health conditions rose to the level of an "extraordinary and compelling" reason. *See United States v. Fowler*, No. 17-CR-00412-VC-1, 2020 WL 3034714, at *1 (N.D. Cal. June 6, 2020) (granting release for defendant who had served 11 months of the 60 month sentence since her chronic asthma constituted an "extraordinary and compelling" reason); *United States v. Castillo*, No. CR H-08-146-01, 2020 WL 2820401, at *1 (S.D. Tex. May 29, 2020) (granting release for defendant suffering from diabetes and heart issues who had served 12 years of a life sentence). For the reasons set forth above, this is one of those cases.

Sections 3553 and 3582 also require consideration of public safety. 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii). Galaz's underlying offense was a nonviolent drug crime and therefore does not alone constitute a finding of Galaz as a danger to the community. *Fowler*, 2020 WL 3034714, at *1 (granting release for prisoner convicted of distribution of and conspiracy to distribute methamphetamine noting that she "has never been arrested or convicted for committing violent crime [and] is not a danger to the

community."); *see also United States v. Mondaca*, 89-CR-0655 DMS, 2020 WL 1029024, at *4 (S.D. Cal. Mar. 3, 2020) (finding conspiracy to possess cocaine with intent to distribute was "a non- violent drug offense"); *United States v. York*, No. 3:11-CR-76, 2019 WL 3241166, at *7 (E.D. Tenn. July 18, 2019) (finding defendant convicted of drug offense did not present a danger because his "criminal history does not involve violence"). While the Court takes seriously the Government's concerns regarding the "destruction [drugs] cause[] this community," ECF No. 58 at 19, Galaz's instant conviction and prior conviction were not in any way violent. Moreover, this Court acknowledged at sentencing that Galaz had "rehabilitated herself since [her] arrest by opening [a] business, [and] becoming [a] caring mother." ECF No. 68, Ex. A at 4. Accordingly, the Court finds that Galaz's release does not threaten to harm public safety. Ultimately, Galaz's medical conditions—combined with the underlying nature of her offense and the high risk posed by COVID-19—clear the bar set by 18 U.S.C. § 3582(c).

Galaz indicates that if released, she would reside with either her fiancé, Efren Cabrera, in Tijuana, Baja California, Mexico or alternatively with her in-laws (Mr. Cabrera's parents) in the Sun Valley neighborhood of Los Angeles and that once released, she plans to have her daughter come live with her. ECF No. 65 at 20-21; ECF No. 65-1, Ex. H at 66. It does not appear that Galaz has a residence in the Southern District of California. The Court will reduce the sentence to time served and modify the conditions of supervised release to provide for home incarceration at the home of her in-laws (Mr. Cabrera's parents) in the Sun Valley neighborhood in Los Angeles. *See United States v. Ben-Yhwh*, ___ F. Supp. 3d ___, No. CR 15-00830 LEK, 2020 WL 1874125, at *1 (D. Haw. Apr. 13, 2020) (reducing sentence to time served and mandating home confinement on supervisory release); *United States v. Johnson*, No. 4:00-CR-40023, 2020 WL 1434367, at *5 (W.D. Ark. Mar. 24, 2020) (reducing sentence to time served and requiring defendant to live at specific care center on supervised release for 5 years);

*United States v. Flores*, No. 19- CR-6163L, 2020 WL 3041640 (W.D.N.Y. June 8, 2020) (reducing sentence to time served and ordering 18 months of home confinement); *United States v. Ramos*, No. 18-CR-30009-FDS, 2020 WL 1478307, at *2 (D. Mass. Mar. 26, 2020) (granting release and ordering home detention). Since home incarceration in Los Angeles will require transfer of supervision to the Central District of California, the Court will add a term of supervised release that requires Galaz to reside in a Residential Reentry Center to permit the processing of the transfer.

## III. FINDINGS

In light of the heightened medical risk the COVID-19 pandemic poses to Galaz in particular, there are extraordinary and compelling reasons to order her immediate release from FMC-Carswell. "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation." *United States v. Hernandez*, No. 18-cr-00834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020). "It presents a clear and present danger to free society for reasons that need no elaboration." *Id.* The CDC has warned that COVID-19 poses a heightened risk to those incarcerated in jails and prisons. Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctionaldetention.pdf. The conditions at FMC-Carswell raise particular concerns for Galaz given her medical vulnerabilities, and her continued incarceration over the coming weeks would impose upon Galaz—in addition to other inmates and staff—additional and unnecessary health risks that can be minimized by her early release. *See, e.g.*, Tana Ganeva, *For Women At A Federal Prison Hospital In Texas, Fear That Coronavirus Will Spread 'Like Wildfire*,' THE APPEAL, Apr. 21, 2020; Mark Dent, et al., *Sick, Elderly, and Fearing Coronavirus: Life Inside Fort Worth's Women's Federal Prison*, FORT WORTH STAR-TELEGRAM, April 20, 2020.

**IV. CONCLUSION**

For the reasons set forth above, the Motion for Release or Home Confinement, Motion for Compassionate Release, Motion to Reconsider or Renew, and Motion for Sentence Reduction are **GRANTED**, to be effective at the close of business today. Galaz's sentence is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3852(c), effective immediately, to be followed by a 36-month term of supervised release under conditions set forth in the original judgment, plus the following added special conditions: (1) Galaz shall be placed in home confinement for a period of 18 months without electronic monitoring where she will be restricted to her residence at all times except for medical necessities and court appearances or other activities specifically pre-approved by the Court; (2) Galaz shall reside in a Residential Reentry Center as directed by the U.S. Probation Office for a period of up to 30 days to permit the transfer of Galaz's case to the Central District of California in order to facilitate the home confinement term.

It is **FURTHER ORDERED** that Galaz shall remain in self-quarantine for a period of time not less than 14 days after her release.

Galaz is **HEREBY ORDERED** to report by telephone to the U.S. Probation Office in San Diego, California within 24 hours of her release from BOP custody. The Government shall serve a copy of this order on the Warden at FMC-Carswell immediately. The Warden of FMC-Carswell shall immediately release Defendant Gloria Galaz from custody. In the event that the Warden or any party requests any clarification of or modification to this order, they shall make such request in writing immediately upon receipt of the order.

**IT IS SO ORDERED.**

Dated: August 6, 2020

Hon. Gonzalo P. Curiel
United States District Judge